# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISON

| | |
|---|---|
| TSHOMBE MILLER, | ) CASE NO. 4:19-CV-02710-SL |
| | ) |
| Plaintiff, | ) JUDGE SARA LIOI |
| | ) UNITED STATES DISTRICT JUDGE |
| v. | ) |
| | ) MAGISTRATE JUDGE |
| WARDEN EDWARD SHELDON, | ) CARMEN E. HENDERSON |
| | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendant, | ) |

## I.      Introduction

Petitioner, Tshombe Miller, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Miller is an Ohio inmate currently serving an aggregate prison term of four consecutive life sentences and forty-nine years in prison for rape and gross sexual imposition. After the Court dismissed various unexhausted grounds for relief (ECF Nos. 17, 19), Miller has three grounds remaining. (ECF Nos. 1, 15, 22). This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Miller's petition and other case-dispositive motions. Because Miller's claims are either meritless or procedurally defaulted, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

## II.     Relevant Factual History

The Ohio Court of Appeals, Seventh Appellate District, set forth the following facts on direct appeal:

Appellant was indicted on 21 counts after his two daughters reported sexual abuse to a Children Services caseworker in September 2015. At the time of the disclosure, Child A was 14 years old (date of birth April 6, 2001), and Child B was 13 years old (date of birth May 2, 2002). . . .

Child A testified her first memory of being sexually abused by Appellant was when she was 10 ten years old and living with him in Campbell. (Tr. 404, 407-408). Appellant woke her up, inserted his fingers in her vagina, and made her masturbate him. (Tr. 408-409). She remembered this occurring after her tenth birthday as Appellant's birthday (June 22) approached. (Tr. 475). The state therefore amended the gross sexual imposition count in the indictment (and in the bill of particulars) to contain an ending date range of June 22, 2011. (Tr. 560). Child A said Appellant digitally penetrated her a second time when she was ten, stopped for a time, and then started again when she was 11. (Tr. 411). Digital penetration also occurred when she was 12 and 14 (but not when she was 13). (Tr. 411-412).

When Child A was 12, Appellant forced her to perform fellatio. He continued to make her perform fellatio when she was 13 and when she was 14. It occurred too many times for her to count. (Tr. 412-413). She testified Appellant performed oral sex on her (cunnilingus) when she 12, 13, and 14. This occurred more than ten times (but not more than 20 times). (Tr. 413-414, 464-465). She remembers this occurring during the time they lived on Cameron, on Glenwood, and on the west side (at Appellant's girlfriend's house in 2015). (Tr. 465-466). Appellant subjected Child A to vaginal intercourse when she was 13 and 14. (Tr. 414-415). This first occurred when they lived on Glenwood. (Tr. 468).

Child A remembered Appellant showing pornographic videos to her and Child B while they lived on Cameron. (Tr. 418, 459). Another time, he made her and Child B engage in oral sex with each other and then made Child B perform fellatio on him while he performed oral sex on Child A. This occurred on Mother's Day when they lived on Cameron. (Tr. 421, 456). At the time, their mother was getting a manicure, and they were "on punishment." (Tr. 421-422). In providing examples of the punishment inflicted by Appellant, Child A described how she would: "Get whooped with a belt, extension cord, get choked up, get kicked, get slapped, get punched." (Tr. 420). Appellant had guns and a "Rambo knife" in the house. (Tr. 420). As to Appellant's instructions on keeping the sexual abuse a secret: he originally provided candy and told her not to tell; he then said not to tell or he would be "locked up for a long time"; he told

her if she got pregnant and blamed him, he would "beat me until I die or he's gonna deny it and disown me"; he threatened, "[i]f we told somebody he would kill us"; and he stated, "I brought you into this world, I can take you out." (Tr. 408, 419, 425-426). She explained, "there's different ways you can mean by that, but his was death." (Tr. 426). She believed his death threats as he was abusive to everyone in the family, including her mother and the babies. (Tr. 419-420).

Child B was 15 years old at the time of her testimony and just finished seventh grade. She confirmed the location and estimated dates of occupancy of the children's residences. She said her mother had 9 children, some fathered by Appellant who had legal custody of her during the abuse. The first time she remembered being touched by her father was when they briefly lived in the Plaza View apartments on the east side of Youngstown. (Tr. 370-371). Appellant made her and Child A sleep with him, and he put his fingers in her "private area" while she was sleeping which caused pain. (Tr. 344-345). She believed this occurred while her mother was at the hospital giving birth to her brother. (Tr. 344, 371). As this brother's birth occurred in December 2011, this would have made Child B under ten years of age at the time of the first rape offense. (Tr. 345, 371). She originally reported she was first abused at age 12, which ended up corresponding to her first subjection to fellatio. (Tr. 528, 547).

After the first digital penetration, Child B felt as if Appellant put his fingers inside her "every time my mom would leave the house" and said it was too many times to count. (Tr. 345, 384). When they lived on Cameron Street on the south side of Youngstown, he would take her and Child A to the basement and "touch our inner private part" which she described as "[f]ingering" that would last for a long time and would hurt the whole time. (Tr. 366-368). She said they moved from Cameron Street to the residence on Glenwood Avenue near the end of 2014 (when she was 12). (Tr. 365). Appellant made Child B perform fellatio on him more than 20 times starting after her (twelfth) birthday in May 2014 and continuing in 2015. (Tr. 346-347, 385). Child B remembered Appellant forcing her to perform sexual acts in the summer of 2015, the spring of 2015, and the prior winter, but not during the fall of 2014. (Tr. 351-352).

She said he once attempted vaginal intercourse with her on her mother's birthday, while she was home alone with Appellant and Child A; Appellant put "clear stuff" on his penis, but she refused to obey his commands to open her legs. (Tr. 345-346). Child B confirmed Appellant showed them pornography. (Tr. 353).

Appellant told her and Child A he was getting them ready for life. (Tr. 347). She testified, "he already told us if we told anybody he was going to kill us" which she believed "[b]ecause he's threatening." (Tr. 348, 353-354). He had three guns in the house. On the day her mother caught Appellant touching her, Appellant brandished a rifle, aimed it at everyone in the room, and announced he was not afraid to kill them. (Tr. 348-349).

Although this occurred in July 2015, the mother made no report of sexual abuse. The children ran away from home on more than one occasion. The sexual abuse did not stop for Child A until the end of September 2015, when Child B made statements to her guidance counselor suggesting abuse and Child A thereafter made disclosures to a Children Services caseworker. While another caseworker interviewed each child at the Child Advocacy Center, a nurse practitioner watched from behind one-way glass in order to gather information for the medical examination. Child A, who was 14, reported the abuse began when she was 10 and the last incident occurred three days before the disclosure when Appellant forced her to perform fellatio on him at his girlfriend's house. (Tr. 527-528). Child A recounted digital penetration, fellatio, vaginal intercourse, and being forced to masturbate her father. (Tr. 527, 548). She reported being forced to perform fellatio at the same time Child B was performing such act on him. (Tr. 556). The nurse practitioner testified Child B, who was 13, reported the abuse started when she was 12 and included fellatio and digital penetration. (Tr. 528, 541, 543, 547). The medical examination revealed both children were infected with the same sexually transmitted disease.

*Ohio v. Miller*, 118 N.E.3d 1094, 1096–99 (Ohio Ct. App. 2018).

## III.  Relevant State Procedural History

### A.  Indictment

On July 21, 2016, Miller was indicted for:

Ten counts of Rape in violation of Ohio Rev. Code § 2907.02(A)(4)(C)

Ten counts of Rape in violation of Ohio Rev. Code § 2907.02(A)(2)(B), a first-degree felony

One count of Gross Sexual Imposition in violation of Ohio Rev. Code § 2907.05(A)(4)(C), a third-degree felony

(ECF No. 9-1, PageID #: 77–82).

B.    **Bill of Particulars**

On August 16, 2016, Miller requested discovery and a bill of particulars. (ECF No. 9-1, PageID #: 86). The Court ordered the State to provide a description of each item of evidence it intended to introduce against Miller and sustained Miller's motion. (ECF No. 9-1, PageID #: 95, 97). The State provided Miller with "open discovery" and a bill of particulars. (ECF No. 9-1, PageID #: 99–103).

The bill detailed which victim and what acts made up each count. Counts 1–5 (Rape) involved Miller's younger daughter J.W. who alleged that Miller compelled her, by threat of force, to perform fellatio on him and that he digitally penetrated her on multiple occasions. (ECF No. 9-1, PageID #: 100–01). The alleged abuse began when J.W. was twelve years old. (ECF No. 9-1, PageID #: 100–01). Counts 6–10 (Rape) also involved J.W. but occurred when she was thirteen and older. (ECF No. 9-1, PageID #: 101). Again, the Bill alleged that Miller compelled J.W. by threat of force to perform fellatio on him on multiple occasions and he digitally penetrated J.W. on multiple occasions. (ECF No. 9-1, PageID #: 101). On one occasion, Miller threatened J.W. with a firearm. (ECF No. 9-1, PageID #: 101). Count 11 (Gross Sexual Imposition) involved Miller's older daughter, C.W. (ECF No. 9-1, PageID #: 101–02). The bill alleged that when C.W. was ten years old, Miller forced her to touch his penis and masturbate him. (ECF No. 9-1, PageID #: 101–02). Counts 12–16 (Rape) involved C.W. from when she was ten to thirteen years old. (ECF No. 9-1, PageID #: 102). The bill stated that, on multiple occasions, Miller forced C.W. to perform fellatio on him and digitally penetrated her. (ECF No. 9-1, PageID #: 102). Counts 17–21 (Rape) involved C.W. from the ages of thirteen to fourteen years old. (ECF No. 9-1, PageID #: 102–03). The bill indicated that Miller forced C.W. perform fellatio on him and penetrated her

digitally on multiple occasions. (ECF No. 9-1, PageID #: 102–03). It also stated that Miller threatened to kill the entire family if C.W. became pregnant. (ECF No. 9-1, PageID #: 103).

### C.    Jury Trial and Sentence

On June 20, 2017, Miller's jury trial began. (ECF No. 9-1, PageID #: 184). On June 22, 2017, the jury unanimously found Miller guilty of all counts. (ECF No. 9-1, PageID #: 184). On August 8, 2017, the court sentenced Miller to an aggregate prison term of four consecutive life sentences and 49 years in prison. (ECF No. 9-1, PageID #: 195–98). The court additionally adjudicated Miller a Tier III Sex Offender. (ECF No. 9-1, PageID #: 200).

### D.    Direct Appeal

On appeal, with new counsel, Miller raised two assignments of error:

> 1. Appellant was denied due process of law pursuant to both the United States and Ohio constitutions, had his right to protection against double jeopardy violated and was further deprived his rights pursuant to Article I, Section 10 of the Ohio Constitution as the State failed to distinguish the alleged crimes through indictment, bill of particulars and/or at trial.

> 2. Appellant was denied due process of law pursuant to both the United States Constitution and Ohio Constitution as there is no way to know that the jurors who convicted him reached a unanimous verdict as to each and every act because the acts in this case were not delineated.

(ECF No. 9-1, PageID #: 215). On August 21, 2018, the Court of Appeals of Ohio, Seventh Appellate District, affirmed the judgment of the trial court. (ECF No. 9-1, PageID #: 243).

### E.    Appeal to Ohio Supreme Court

On September 17, 2018, Miller timely filed a pro se appeal notice in the Ohio Supreme Court. (ECF No. 9-1, PageID #: 261). Miller's memorandum in support of jurisdiction raised the following propositions of law:

> I. Appellant was denied due process of law pursuant to both the United States and Ohio constitutions, had his right to protection against double jeopardy violated and was further deprived his rights pursuant to Article I, Section 10 of the Ohio Constitution as the State failed to distinguish the alleged crimes through indictment, bill of particulars and/or at trial.

> II. Appellant was denied due process of law pursuant to both the United States Constitution and Ohio Constitution as there is no way to know that the jurors who convicted him reached a unanimous verdict as to each and every act because the acts in this case were not delineated.

(ECF No. 9-1, PageID #: 264–75). On November 7, 2018, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (ECF No. 9-1, PageID #: 298).

### F.     Appeal to United States Supreme Court

On November 29, 2018, Miller timely filed a pro se petition for a writ of certiorari in the United States Supreme Court. (ECF No. 9-1, PageID #: 300). Miller presented the following questions:

> I. Is "carbon copy" charging of multiple allegations of rape violative of due process and/or double jeopardy pursuant to the United States and Ohio Constitution and/or violative of due process under Article I, Section 10 of the Ohio Constitution?

> II. Does "carbon copy" charging of multiple allegations of rape violate a defendant's due process rights as to juror consensus?

(ECF No. 9-1, PageID #: 301). On February 19, 2019, the Supreme Court denied Miller's petition. (ECF No. 9-1, PageID #: 337).

### G.     Application to Reopen Appeal

On October 15, 2018, Miller applied to reopen his appeal pursuant to Ohio App. Rule 26(B) based on ineffective assistance of his appellate counsel. (ECF No. 9-1, PageID #: 339). He stated that his appellate counsel should have brought the following assignments of error on direct appeal:

> 1. Appellant was denied due process of law under the Sixth and Fourteenth Amendments of the United States Constitution and Article I Section 10 of the Ohio Constitution as the State failed to provide Appellant with accusations through Indictment, Discovery, Bill of particulars, and/or Notice of intent to use evidence.
>
> 2. Appellant was denied the right to effective assistance of counsel as guaranteed under the Sixth Amendment of the United States Constitution when trial counsel failed to challenge for cause or use peremptory challenge to excuse jurors from sitting on the jury.
>
> 3. Appellant was denied the right to effective assistance of counsel as guaranteed under the Sixth Amendment to the United States Constitution when trial counsel failed to object to the prosecutor's improper comments during the closing arguments.
>
> 4. Appellant was denied the effective assistance of counsel as guaranteed under the Sixth Amendment to the United States Constitution when trial counsel failed to call defense witness to testify.
>
> 5. Appellant was denied effective assistance of counsel guaranteed under the Sixth Amendment of the United States Constitution when trial counsel failed to investigate defense for the appellant.

(ECF No. 9-1, PageID #: 342–46). On November 30, 2018, the court of appeals denied Miller's application. (ECF No. 9-1, PageID #: 385). Miller did not appeal to the Ohio Supreme Court. On April 8, 2019, Miller moved to amend his application to reopen his appeal. (ECF No. 9-1, PageID #: 398). He requested that the court add certain exhibits to support his assignments of error. (ECF No. 9-1, PageID #: 398). The court of appeals overruled the motion because it had already denied his motion to reopen. (ECF No. 9-1, PageID #: 409). Miller wrote a letter to the court of appeals stating that he did not receive the court's judgment entry from the original denial of his application to reopen. (ECF No. 9-1, PageID #: 411). He requested that the court provide him a new dated judgment entry. (ECF No. 9-1, PageID #: 411). The Court finds no response to this letter.

## IV.    Federal Habeas Corpus Petition

On November 6, 2019, Miller petitioned pro se that this Court issue a writ of habeas corpus. (ECF No. 1). After Respondent moved to dismiss Miller's mixed petition, Miller moved to dismiss certain grounds that had not been exhausted. (ECF No. 17). The Court granted the motion. (ECF No. 19). Miller has three remaining grounds for relief:

> **GROUND ONE:** Petitioner was denied due process of law pursuant to the Sixth and Fourteenth Amendment of the United States Constitution, had his right to protection against double jeopardy violated as the State failed to distinguish the alleged crimes through indictment, the bill of particulars and/or at trial.
>
> **Supporting Facts:** Carbon copy char[g]ing of multiple allegations of rape violate due process and/or double jeopardy pursuant to the United States Constitution.
>
> **GROUND TWO:** Petitioner was denied due process of law pursuant to the Fourteenth Amendment of the United States Constitution as there is no way to know that the jurors who convicted him reached a unanimous verdict as to each and every act because the acts in this case were not delineated.
>
> **Supporting Facts:** Carbon copy charing [sic] of multiple allegations of rape violate a defendant's due process rights as to juror consensus on all charges.
>
> **GROUND THREE:** Petitioner was denied due process of law pursuant to the Sixth and Fourteenth Amendment to the United States Constitution, had ineffective assistance of counsel at trial and on appeal when the State failed to provide petitioner with accusations through Indictment, Discovery, Bill of particulars, and/or Notice of intent to use evidence. [1]
>
> **Supporting Facts:** 1) The indictment, discovery, bill of particulars, and/or Notice of Intent to use evidence did not advise the petitioner of the nature and cause of the accusation. 2) Petitioner had not been provided with the necessary information to properly prepare for trial, and meet the State's case, and avoid surprise upon the trial.

---

[1] Miller also moved to dismiss the ineffective assistance of trial counsel portion of Ground Three. (ECF No. 17). The Court granted the motion and the undersigned will not consider that part of Ground Three in this report and recommendation.

(ECF No. 1). Respondent provided the state court record in its motion to dismiss for failure to exhaust (ECF No. 9) and later supplemented the record pursuant to court order (ECF No. 18). Respondent filed the return of writ on January 15, 2021. (ECF No. 20). Miller filed his traverse on July 30, 2021. (ECF No. 22).

## V.      Legal Standards

### A.      Jurisdiction

District courts may entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(b). A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d). The Mahoning County Court of Common Pleas sentenced Miller, and Mahoning County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Miller's § 2254 petition.

### B.      Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v.*

*Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (citations omitted).

### C.      AEDPA Standard of Review

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citations omitted). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.* (citations omitted).

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . .

. determination." *Rice v. Collins*, 546 U.S. 333, 341–42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Id*. at 102 (citations omitted). "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id*. Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## VI.    Discussion

### A.    Ground One: "Carbon-copy" Indictment and Double Jeopardy

In his first ground for relief, Miller argues that he was denied his Sixth and Fourteenth Amendment due process rights and his right to protection against double jeopardy because the State failed to distinguish his alleged crimes through the indictment, the bill of particulars, or at trial. He states that the "indictment, the bill of particulars, and/or testimony presented at trial failed to appraise Petitioner of what alleged occurrences formed the bases of the criminal charges he faced." (ECF No. 22 at 9). Respondent asserts that Miller relies on case law that the Sixth Circuit declines to follow and suggests that the court of appeals properly rejected Miller's argument. The Court agrees.

"[T]he federal guarantee of a grand jury indictment has not been applied to the states." *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984) (citing *Branzburg v. Hayes*, 408 U.S. 665 (1972)). Instead, "[t]he due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." *Id.* (citations omitted). "This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged." *Id.* Miller asserts that although he was given notice that he must defend against allegations of sexual abuse over a period of years, he "was given no notice of the multiple alleged incidents for which he was tried and convicted." (ECF No. 22 at 10). Miller presented this argument to the court of appeals, which rejected it. The court explained:

> Appellant does not contend the indictment, bill of particulars, or trial testimony must contain an exact date where a "block" of charges alleges the same offense against a child and provides the same date range. And, there is no issue with the provision of a date range where the victim of rape is a child, especially where she lives with the perpetrator who is her father. *See, e.g., State v. Parker*, 7th Dist. No. 13 MA 161, 2015-Ohio-4101, ¶ 15-25 (each offense need not be differentiated by date). Regarding an indictment, "it shall be sufficient if it can be understood that the offense was committed at some time prior to the time of the filing of the indictment." *Sellards*, 17 Ohio St.3d at 171 (where date is not an element), citing R.C. 2941.03(E).

> Appellant argues the failure to specifically assign a type of sexual conduct to each count of rape in the "block" at some point before submission of the case to the jury violated his constitutional rights. Although the rape counts had the element of "sexual conduct" and the victims testified to various types of sexual conduct, Appellant suggests the trial testimony did not refer to individual offenses. However, delineation of more than the indicted five acts of sexual conduct in each "block" of counts occurred in the trial testimony.

> As to Child A, Appellant was convicted of five counts of rape of a child under 13, five counts of rape with force or threat of force (estimated to have occurred after she turned 13), and one count of gross sexual imposition of a child under 13. As for estimates, Child

A testified Appellant made her perform fellatio too many times for her to count, he performed cunnilingus on her more than 10 times but less than 20 times, and he digitally penetrated her throughout the four years of abuse. Child A set forth her first memory of abuse as Appellant waking her up when they lived at a certain residence in a certain city when she was 10 years old, occurring after her tenth birthday (April 6, 2011) and closer to Appellant's birthday (June 22). She described the offense of gross sexual imposition whereby Appellant made her masturbate him. During this same memory, Appellant committed rape of a child under 13 by digitally penetrating her vagina. She remembered he later digitally penetrated her a second time when she was ten, stopped for a time, and then started again when she was 11. Digital penetration also occurred when she was 12. Appellant also forced her to perform fellatio when she was 12 and performed oral sex on her when she 12. She clearly spoke of more than five instances of sexual conduct when she was under the age of 13.

As for the next five counts, which did not require the child to be under 13, digital penetration reoccurred when Child A was 14 (but not when she was 13). Appellant continued to make her perform fellatio when she was 13 and when she was 14, the last time occurring at his girlfriend's house just days before Children Services intervened. He continued to perform oral sex on her when she was 13 and when she was 14. She remembered him performing oral sex on her while they lived on Cameron (including during a threesome with Child B), on Glenwood, and on the west side (at Appellant's last girlfriend's house in 2015).

When Child A was 13 and also when she was 14, Appellant subjected her to vaginal intercourse; this first occurred after they moved to Glenwood. One of the last times it occurred was in the bathroom at Appellant's girlfriend's house when the child's brother was downstairs playing a videogame. She spoke of more than five instances of sexual conduct occurring after she turned 13. Contrary to Appellant's argument on appeal, Child A did set forth testimony as to the acts corresponding to the counts and the state did not rely on estimates to satisfy the charges related to her. In fact, her estimates were greater than the number of counts filed against Appellant.

As to Child B, Appellant was convicted of five counts of rape of a child under 13 and five counts of rape with force or threat of force (not involving a child under the age of 13). First, Child B provided the specific family residence (Plaza View apartments on the east side of Youngstown), location within the residence (Appellant's

bed), and circumstances (why her mother was absent in the middle of the night) related to her first memory of sexual abuse by Appellant during which he digitally penetrated her vagina. Child B said digital penetration later occurred in the basement of the house on Cameron; she was under the age of 13 when they lived on Cameron. This occurred more than once for prolonged sessions. The digital penetration occurred so many times that she testified she could not count the incidents.

Child B also testified she was forced to perform fellatio on Appellant starting after her twelfth birthday in 2014 and continuing into 2015. The described sexual conduct did not occur in the fall of 2014 but then reoccurred in the winter before Child B turned 13. Additionally, her older sister testified to an episode on Mother's Day while living on Cameron where Appellant forced each child to perform oral sex on the other child and then made Child B perform fellatio on him (while he performed oral sex on Child A). As to the five non-life counts which did not require the victim to be under the age of 13, Child B testified the sexual conduct occurred in the spring of 2015 and in the summer of 2015. As the sexual conduct continued, the child began running away from home in July 2015. There was testimony revealing the children were sometimes forced to perform fellatio on Appellant together. Finally, Child B testified Appellant made her perform fellatio too many times to count. She then specified it was *more than 20 times* between her twelfth birthday in 2014 and the summer of 2015.

Notably, this provided a definite minimum amount of times. Furthermore, the number of counts filed in relation to this child was less than the definite minimum number of times recounted in the testimony; in other words, the state did not file the exact amount of charges as the total estimate. *See, e.g., Moats*, 7th Dist. No. 14 MO 0006 at ¶ 45; *Billman*, 7th Dist. Nos. 12 MO 3, 12 MO 5 at ¶ 36; *Clemons*, 7th Dist. No. 10 BE 7 at ¶ 42. Regardless, this court does not follow *Valentine. See, e.g., State v. Adams*, 7th Dist. No. 13 MA 130, 2014-Ohio-5854, 26 N.E.3d 1283, ¶ 36; *Billman*, 7th Dist. Nos. 12 MO 3, 12 MO 5 at ¶ 34-36; *Clemons*, 7th Dist. No. 10 BE 7 (finding no due process violations and opining potential double jeopardy concerns can be cured if they arise in the future).

We noted this type of argument would improperly protect a defendant who committed multiple instances of the same offense against a child in his care. *Billman*, 7th Dist. Nos. 12 MO 3, 12 MO 5 at ¶ 36. "[A]s the dissent in *Valentine* noted, it is the province of the jury to determine if multiple acts occurred where they are estimated as opposed to individually detailed." *Clemons*, 7th Dist.

No. 10 BE 7 at fn. 2, citing *Valentine*, 395 F.3d at 641 (Gilman, J., dissenting) (while warning: "prohibiting the use of multiple identical charges in a single indictment would severely hamper a state's ability to prosecute crimes where a young child is both the victim and the sole witness. Young children often make difficult, forgetful, or uncooperative witnesses in abuse cases."). Contrary to the *Valentine* majority's claim, there is no indication the jury would believe a finding of guilt on one count in a block would require a conviction on another count merely because it was in the same block of counts. Lastly, we note the trial court instructed the jury: The charges set forth in each count in the indictment constitute a separate and distinct matter. You must consider each count and the evidence applicable to each count separately and you must state your findings as to each count uninfluenced by your verdict as to any other count. The defendant may be found guilty or not guilty of any one or all of the offenses charges. Each of them is separate." (Tr. 674). *See State v. Shafer*, 8th Dist. No. 79758, 2002-Ohio-6632, ¶ 24.

For all of the foregoing reasons, this assignment of error is overruled.

*Ohio v. Miller*, 118 N.E.3d 1094, 1102–04 (Ohio Ct. App. 2018).

To prevail, Miller must demonstrate that the court of appeals' decision was contrary to or an unreasonable application of clearly established Supreme Court precedent or that it is based on an unreasonable determination of the facts. 28 U.S.C. § 2254. Miller does not point to, and this court cannot find, "a single Supreme Court case that has invalidated, or considered the validity of, a state court conviction based on the sufficiency of a state indictment." *Freeman v. Tibbals*, No. 1:12 CV 2557, 2013 WL 4874112, at *3 (N.D. Ohio Sept. 10, 2013). Instead, Miller improperly attempts to rely on the Sixth Circuit's decision in *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005). There, an Ohio jury convicted Valentine of 40 counts of sexual abuse. *Id.* at 629. His indictment included 20 "carbon copy," identically worded counts of child rape and 20 counts of identically worded felonious sexual penetration. *Id.* The only evidence as to the number of offenses committed was the victim's testimony that the abuse occurred "about 20," "about 15" or "about

10" times. *Id.* The district court issued a writ of habeas corpus, reasoning that the indictment and conviction failed to provide sufficient specificity to ensure Valentine would not again be convicted of the same crime. *Id.* at 630.

However, in *Cole v. Smith*, a case with similar facts, the Sixth Circuit declined to follow *Valentine*, reasoning that:

> In light of *Renico*'s admonition that "clearly established Federal law" means relevant Supreme Court precedent and not circuit court opinions, *see Renico*, 559 U.S. at 778-79, and because "no Supreme Court case has ever found the use of identically worded and factually indistinguishable [state] indictments *unconstitutional*," *Valentine*, 395 F.3d at 639 (Gilman, J., dissenting), we doubt our authority to rely on our own prior decision—*Valentine*—to "independently authorize habeas relief under AEDPA."

577 F. App'x 502, 507–08 (6th Cir. 2014) (quoting *Renico v. Lett*, 559 U.S. 776, 779 (2010). The court concluded that the habeas petitioner must "point to a Supreme Court case that would mandate habeas relief in his favor." *Id.* Miller's reliance on *Valentine* is, therefore, misplaced. Consequently, Miller failed to demonstrate that the court of appeal's rejection of his Sixth Amendment claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). *See Fathi v. Hoffner*, No. 1:13-cv-835, 2016 WL 6067951, at *7 (W.D. Mich. Oct. 17, 2016) ("Put simply, neither *Valentine* nor the cases cited therein are clearly established federal law. They cannot be relied upon to authorize habeas relief.").

The Court notes that Miller cites to *United States v. Cruikshank*, 92 U.S. 542 (1875) to support his argument. He argues that *Cruikshank* stands for the principle that an indictment must protect the defendant from double jeopardy. Indeed, *Cruikshank* provides that one of the objects of the indictment is "to furnish the accused with such a description of the charge against him as will enable him to make his [defense], and avail himself of his conviction or acquittal for protection

against a further prosecution for the same cause." 92 U.S. at 558. However, *Cruikshank* involved

a federal indictment, not a state one. As noted above, the Supreme Court has not imposed the same

obligations on state charging documents. State charging documents simply must provide the

defendant fair notice of the charges against him to permit adequate preparation of his defense. The

indictment in this case did so adequately. The indictment and bill of particulars together informed

Miller of the nature of the conduct alleged (rape of two minors), the identity of the two victims,

and the time period over which the rapes occurred. This is sufficient for a state indictment. Thus,

*Cruikshank* does not support Miller's argument.[2] Accordingly, Miller's first ground for relief is

without merit.

**B.**    **Ground Two:**

In his second ground for relief Miller argues that he was denied due process of law under

the Fourteenth Amendment because "there is no way to know that the jurors who convicted him

reached a unanimous verdict as to each and every act." (ECF No. 1 at 8). He asserts that the carbon

copying charging of multiple allegations of rape violated his right to have juror consensus on all

charges. Miller presented this argument to the Ohio court of appeals. The court rejected the

argument, stating:

> Appellant argues "there is no way to know, based on the trial
> testimony and jury instructions, that each juror considered specific
> testimony as to a specific charge." He concludes he was denied due
> process because it "is impossible to know what count(s) the jury
> convicted on as to what conduct" where the "acts in this case were
> not delineated." He therefore contends even if the types of sexual
> conduct were sufficiently delineated in the trial testimony, they were
> not aligned with any particular count in the jury instructions to
> ensure every juror was voting on the same instance of sexual

---

[2] Miller also cites to the Ohio Constitution's indictment requirements to support his argument that his due process rights were violated because the indictment was insufficient. However, arguments grounded in state law are not cognizable on habeas review. *See Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

conduct (e.g., fellatio, digital penetration, etc.). The state responds that the jury need not unanimously agree on the underlying type of sexual conduct constituting each count of rape, citing the Ohio Supreme Court's *Thompson* case.

In T*hompson*, the defendant argued: the jury should have been instructed to make a specific finding as to whether he committed vaginal rape, anal rape, or both; some jurors may have found him guilty of one type and others may have found him guilty of another type of sexual conduct; and it was not possible to ascertain whether there was a non-unanimous finding as to the type of sexual conduct. *State v. Thompson*, 33 Ohio St.3d 1, 11, 514 N.E.2d 407 (1987). The Supreme Court found these arguments lacked merit and concluded there was no requirement for the reviewing court to have knowledge of the type of sexual conduct found by each juror. Id. "The fact that some jurors might have found that appellant committed one, but not the other, type of rape in no way reduces the reliability of appellant's conviction, because a finding of either type of conduct is sufficient to establish the fact of rape in Ohio." *Id. See also Shafer*, 8th Dist. No. 79758 at ¶ 23-32 (overruling a defendant's argument that the jury should have been instructed it must reach a unanimous determination identifying the specific conduct for each count); *State v. Bettem*, 7th Dist. No. 93-B-6, 1995 Ohio App. LEXIS 3710 (Aug. 30, 1995) (due process did not require the trial court to instruct the jurors they must unanimously agree on a specified act of sexual conduct). In accordance, this assignment of error is overruled.

*Ohio v. Miller*, 118 N.E.3d 1094, 1096–99 (Ohio Ct. App. 2018).

Miller argues that the United States Supreme Court requires "the prosecution to prove beyond a reasonable doubt all of the element[s] included in the definition of the offense of which the defendant is charge." (ECF No. 22 at 15). This case law, Miler suggests, necessitates that each juror agreed upon the type of sexual conduct he or she found Miller guilty of. Respondent asserts that this ground for relief should be dismissed because, at the time the Ohio courts decided Miller's appeal, there was "no clearly-established federal constitutional right to a unanimous verdict for conviction by a 12-member jury in a state criminal prosecution." (ECF No. 20 at 33–34). The Court agrees with Respondent.

At the time Miller was convicted, there was no clearly established federal law providing the right to a unanimous jury verdict. The case law Miller cites to does not require juror unanimity. The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . and be informed of the nature and cause of the accusation." U.S. Const. amend. VI. The Due Process Clause instructs that the prosecution bears the burden of proving all elements of the offense charged and must persuade the factfinder "beyond a reasonable doubt" of the facts necessary to establish each of those elements. *In re Winship*, 397 U.S. 358, 363–64 (1970). However, neither of these principles require juror unanimity. In fact, at the time of the Ohio Court of Appeals decision, the only relevant Supreme Court precedent, *Apodaca v. Oregon*, specifically concluded that a non-unanimous state court verdict did not violate the United States Constitution. 406 U.S. 404 (1972).[3] As there was not a right to a unanimous jury verdict, the Court concludes that Miller failed to show there was federal law providing the right to a unanimous jury verdict regarding the type of sexual conduct he was convicted of. Accordingly, Miller's second ground for relief is without merit.

    **C.**    **Ground Three:**

---

[3]    The Court notes on April 20, 2020, the Supreme Court overruled *Apodaca* and incorporated the unanimous verdict requirement of the Sixth Amendment into the Fourteenth Amendment Due Process Clause. *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020). This holding, however, does not change the result for Miller for three reasons. First, the "clearly established federal law" required for habeas relief refers to the law at the time of the state-court adjudication. *See Greene v. Fisher*, 565 U.S. 34, 38 (2011) ("§ 2254(d)(1) requires federal courts to 'focu[s] on what a state court knew and did,' and to measure state-court decisions 'against this Court's precedents as of 'the time the state court renders its decision.'" (alterations in original) (citations omitted)). The court of appeals affirmed Miller's decision on August 21, 2018 and the Ohio Supreme Court declined jurisdiction on November 7, 2018. Both dates occurred before April 20, 2020 when *Ramos* was decided. Thus, at the relevant time, the clearly established federal law allowed for jury non-unanimity. Second, Ohio already required a unanimous jury verdict and Miller received one. Third, even if *Ramos* applied, it does not require a unanimous jury verdict as to the type of sexual act the defendant is convicted of.

In his third ground for relief[4], Miller argues that his appellate counsel was ineffective for failing to bring an assignment of error on appeal. Miller asserts that his appellate counsel should have argued that the State failed to provide Miller with accusations through an indictment, discovery, a bill of particulars, or a notice of intent to use evidence. Respondent alleges that Miller procedurally defaulted this argument. Miller responds that he meets the "cause and prejudice" exception.

### i.      Procedural Default

Before a habeas court can consider a ground for relief, the petitioner must exhaust his argument in state court. Although Miller properly brought his argument to the Ohio Court of Appeals through a 26(B) application, Miller failed to appeal the denial of the application to the Ohio Supreme Court. Because Miller did not exhaust the issue before the Ohio Supreme Court and cannot bring the claim now,[5] the issue is procedurally defaulted. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999). "A federal habeas court need not review a procedurally defaulted claim unless the petitioner can show either cause for the default and actual prejudice from the alleged constitutional violation, or that failure to consider the claim would result in a 'fundamental miscarriage of justice[.]'" *Adams v. Burton*, No. 16-1476, 2016 WL 6610219, at *2 (6th Cir. Nov. 8, 2016) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991)). Demonstrating "cause and prejudice" requires: "(1) something external to the defense, which cannot be fairly attributed to him, prevented him from complying with the state procedural rule; and (2) actual prejudice resulted from the alleged constitutional violation." *Rodano v. Marquis*, 1:18 cv 2770, 2020 U.S.

---

[4]      The Court notes that part of Miller's third ground for relief—his ineffective assistance of trial counsel claim—was previously dismissed. (ECF No. 19). The Court, therefore, only addresses the remaining argument.

[5] S.Ct.Prac.R. 6.01(A)(1) provides forty-five days to file an appeal in the Ohio Supreme Court. S.Ct.Prac.R. 7.01(A)(4)(c) prohibits a delayed appeal from a 26(B) application.

Dist. LEXIS 255583, *36 (N.D. Ohio Sept. 24, 2020) (citing *Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991)).

Miller asserts that he meets the "cause and prejudice" exception. He suggests that the procedural default should be excused because the clerk's office did not send Miller the court of appeal's judgment entry. Instead, the clerk sent the decision to his direct appeal attorney who had previously removed himself from the case. The attorney failed to inform Miller of the decision. Miller learned of the judgment later through his trial counsel, but it was too late for him to appeal the judgment. As this excuse is external and cannot be fairly attributed to Miller, the Court will assume that this is sufficient to demonstrate cause and proceed to assessing prejudice. *See Rodano*, 2020 U.S. Dist. LEXIS 255583, *37 (assuming the petitioner demonstrated caused where the clerk's office did not deliver any notice of the court of appeals' decision).

When assessing prejudice, the court considers whether the petitioner suffered actual prejudice as the result of the alleged constitutional violation. *Moore v. Carlton*, 74 F.3d 689, 691–93 (6th Cir. 1996) (citations omitted). In so doing, the court assumes the petitioner has stated a meritorious constitutional claim and goes on to determine whether actual prejudice resulted because of it—i.e., whether a different verdict would have resulted without the assumed constitutional error. *Id*. Miller's alleged constitutional error is ineffective assistance of appellate counsel. Assuming that his argument has merit—as the Court must—having ineffective appellate counsel would have resulted in prejudice to Miller, requiring a difference result. *See Boykin v. Webb*, 541 F.3d 638, 647 (6th Cir. 2008) ("The United States Supreme Court has long held that the Sixth Amendment guarantees the right to effective assistance of counsel on a first direct appeal as of right." (citations omitted)); *see also Maupin v. Smith*, 785 F.2d 135, 139–40 (6th Cir. 1986) ("[W]e shall assume that there was insufficient evidence for a reasonable jury to find [petitioner]

guilty, which is clearly a cognizable constitutional claim. Given this assumption, there can be no doubt that [petitioner] would have been prejudiced by such a constitutional violation."). Miller, therefore, meets the prejudice standard. As such, the Court will continue to assume Miller met the cause requirement and proceed to review the merits of his claim as if it were not procedurally defaulted.

### ii.      Merits – Ineffective Assistance of Appellate Counsel

As noted above, Miller argues that his appellate counsel was ineffective for failing to bring an assignment of error stating that Miller was denied due process of law when the State failed to provide him with accusations regarding a sexually transmitted disease. In considering an ineffective assistance of counsel claim, a habeas court "assess[es] the strength of the claim appellate counsel failed to raise." *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal" *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004) (citations omitted). Thus, a claim appellate counsel could have, but did not raise cannot form the basis of an ineffective assistance of counsel claim unless the claim had a reasonable probability of success at the time it could have been raised to have changed the result of the appeal. *Id*. at 699–700. Appellate counsel cannot be ineffective for failing to raise an issue that lacks merit. *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) (citing *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008)).

Miller presented his argument in his application to reopen his appeal. The appellate court rejected the argument, reasoning:

> This argument is centered on the evidence presented at trial that the children tested positive for the same sexually transmitted disease (STD). As Appellant was not charged with an offense containing an element involving the causing of an STD, there was no reason why

the indictment would contain such information. *See* Crim.R. 7(B) (the indictment shall contain a statement that the defendant has committed a public offense specified in the indictment sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged; "The statement may be made in ordinary and concise language without technical averments or allegations not essential to be proved.").

Likewise, there is no requirement that a rape victim's STD test results be announced in a bill of particulars. The purpose of a bill of particulars is to inform an accused of the nature of the offense and the conduct alleged to constitute the offense. Crim.R. 7(E). "A bill of particulars has a limited purpose—to elucidate or particularize the conduct of the accused alleged to constitute the charged offense." *State v. Sellards*, 17 Ohio St.3d 169, 171, 17 Ohio B. 410, 478 N.E.2d 781 (1985). Additionally, as noted in the direct appeal, open-file discovery was utilized in this case. *Miller*, 2018-Ohio-3430 at ¶ 17.

As for the information provided in discovery, Appellant seems to equate voir dire with discovery as he cites to a statement during jury selection as revealing that only limited information was provided in discovery; the state noted in voir dire that there would be medical testimony as to physical examinations of the victims. (Tr. 88). This statement made during jury selection does not refer to what was provided in discovery. At trial, the nurse practitioner testified that the children tested positive for the same sexually transmitted disease (STD). (The activity log of Children Services and the nurse practitioner reports, which both contained this information, were identified as exhibits but later withdrawn as unnecessary.) There was no objection by counsel as to an issue with notice of the children's diagnoses. In fact, the state filed a notice of intent to use evidence on November 18, 2016, referring to items such as case notes from Children Services and reports from the nurse practitioner. And, the medical records of the children and activity log of Children Services were previously received by defense counsel in discovery as evidenced by a signed receipt on September 12, 2016, wherein he also acknowledged receiving notice of the state's intent to use this evidence. We also note the parties entered a stipulated protective order as to various documents relating to the children on March 8, 2017, and a motion filed by the state on March 15, 2017 pointed out that both victims tested positive for sexually transmitted diseases.

Contrary to Appellant's argument in reopening, there was notice of the children's medical condition provided in discovery. There is no

> indication of ineffective assistance of trial counsel for failing to
> present an objection as to notice of the STD diagnosis of each child
> and no indication of ineffective assistance of appellate counsel for
> failing to raise the issue on appeal.

*Ohio v. Miller*, 17 MA 0120, 2018 WL 6719800, at *2–3 (Ohio Ct. App. Nov. 30, 2018).

Upon review of the court of appeal's decision, the Court concludes that it was neither contrary to federal law nor an unreasonable application of the facts. Miller continues to argue that the State's use of medical records showing that both the victims had the same STD violated his Sixth Amendment rights because he was not given fair notice in the indictment or bill of particulars. As discussed above, "the federal guarantee of a grand jury indictment has not been applied to the states." *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984) (citing *Branzburg v. Hayes*, 408 U.S. 665 (1972)). Instead, "the due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." *Id.* (citations omitted).

Importantly, the fact that the victims had the same STD is not an element of any of the charges against Miller. The fact that the State intended to use the medical records cannot, therefore, be required to provide Miller notice of the charges against him. Nonetheless, the State did notify Miller of its intent to use the medical records and information at trial. The State provided both open discovery—allowing Miller to see all the evidence the State had—and written notice that it would be using the medical reports. (ECF No. 9-1, PageID #: 105). Given that Miller was notified of the charges against him and had knowledge of the evidence against him, the Court fails to find any constitutional violation. Miller had adequate information to prepare a defense. The Court therefore concludes that the State met the notice requirement in this case and any assignment of error on appeal arguing otherwise would likely have been unsuccessful. Accordingly, assuming

Miller's third ground for relief was excused from procedural default, it is nonetheless without merit.

## VII.    Certificate of Appealability

### A.    Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### B.    Analysis

Miller's grounds for relief are either meritless or procedurally defaulted. If the Court accepts the foregoing recommendation, then Miller has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue Miller a certificate of appealability.

## VIII.   Recommendation

Miller has presented only meritless or procedurally defaulted claims. Thus, I recommend that the Court DENY Miller's petition and not grant him a certificate of appealability.

Dated: February 23, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

_____

OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).